**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | CRIMINAL ACTION |
| v. | : | No. 94-196 |
| | : | |
| | : | CIVIL ACTION |
| MELVIN WILLIAMS | : | No. 16-3200 |

**November 3, 2023**                                            **Anita B. Brody, J.**

<u>**MEMORANDUM**</u>

On July 29, 2022, the court denied Melvin Williams' Motion to Correct Sentence Under 28 U.S.C. § 2255. *See* ECF No. 431. Williams now moves for reconsideration requesting that the court grant his § 2255 motion or issue a certificate of appealability. *See* ECF No. 435.[1] I will grant Williams' motion for reconsideration.

**I.      BACKGROUND**

On September 24, 1997, a jury convicted Williams of using and carrying a firearm during and in relation to a "crime of violence" in violation of 18 U.S.C. § 924(c). His § 924(c) conviction, charged in Count 8 of a Superseding Indictment, could have been predicated on any one of the four other offenses for which he was also convicted: conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951 (Count 1); conspiracy to assault and kill federal agents, in violation of 18 U.S.C. § 371 (Count 2); attempt to kill federal agents, in violation of 18 U.S.C. § 1114

---

[1] Shortly after filing the present motion, Williams appealed to the Third Circuit. *See* ECF No. 437. I stayed the Rule 59 motion pending appeal. *See* ECF No. 438. The Third Circuit directed the parties to address whether Williams' appeal could proceed while his Rule 59 motion is pending. *See* Order, *United States v. Williams*, No. 22-2611, ECF No. 9 (3d Cir. Sept. 21, 2022). On September 7, 2023, the Third Circuit stayed the appeal pending my disposition of this motion for reconsideration. *See* Order, *United States v. Williams*, No. 22-2611, ECF No. 24 (3d Cir. Sept. 7, 2023).

(Counts 3 and 4); and assaulting a federal agent with a deadly weapon, in violation of 18 U.S.C. § 111 (Counts 5 and 6). The conspiracy to commit Hobbs Act robbery charged in Count 1 concerned Williams' and co-conspirators' conduct from on or about March 1993 to on or about March 16, 1994. *See* ECF No. 335 at 30. The remaining Counts 2-6 concerned a shootout on March 16, 1994, during which Williams' co-conspirators fired at law enforcement agents. *See id.* at 31–32. It is undisputed that the first two Counts upon which Williams was convicted—conspiracy to commit Hobbs Act robbery and conspiracy to assault and kill federal agents—are no longer valid predicate "crimes of violence" for a § 924(c) conviction. *See* ECF No. 451 at 3. *See also Johnson v. United States*, 576 U.S. 591 (2015); *United States v. Davis*, 139 S. Ct. 2319 (2019).

Williams has previously argued pursuant to 28 U.S.C. § 2255 that the remaining predicate crimes charged in Counts 3-6 likewise are not valid "crimes of violence" and therefore cannot sustain his § 924(c) conviction. *See* ECF Nos. 412, 416. On July 30, 2021, counsel for Williams conceded that his § 2255 motion must be denied pursuant to the Third Circuit's decisions in *United States v. Bullock*, 970 F.3d 210 (3d Cir. 2020) (holding assault of a federal agent has an element of force to constitute a "crime of violence"), *United States v. Walker*, 990 F.3d 316 (3d Cir. 2021) (holding attempt offenses can categorically constitute crimes of violence), *cert. granted, judgment vacated*, 142 S. Ct. 2858 (2022), and *United States v. Wilson*, 960 F.3d 136 (3d Cir. 2020) (holding that trial court's instruction that either conspiracy or the substantive offense could be the predicate for § 924(c) conviction was harmless). *See* Reply to the Government's Response to Defendant's 28 U.S.C. § 2255 Motion at 2–3, ECF No. 425 at 1. Williams disagreed with defense counsel's concession and sought relief in a *pro se* memorandum. *See* ECF No. 426. On July 29, 2022, the court denied Williams' § 2255 motion and *pro se* memorandum and denied a certificate of appealability. *See* ECF No. 431. Williams now moves for reconsideration.

2

## II.    LEGAL STANDARD

On August 8, 2022, Williams filed a *pro se* motion entitled "Motion to Correct Sentence under Rule 60(b)(6) and 59(e)(3)."[2] ECF No. 435. Because Williams' motion was filed no later than 28 days after the order denying his § 2255 motion was entered, it will be addressed under Federal Rule of Civil Procedure 59(e). *See Banister v. Davis*, 140 S.Ct. 1698, 1708 (2020) (explaining the differences between Rule 59(e) and Rule 60(b) motions); 27A Fed. Proc., L.Ed. § 62:756 (2006) ("If it is sought within [28] days, the [motion for reconsideration] may be considered a motion to alter or amend judgment under [Rule 59(e) ]; if not, the motion ... must be treated as a motion ... under [Rule 60].").

The purpose of a Rule 59(e) motion for reconsideration is "to correct manifest errors of law or fact or to present newly discovered evidence." *Harsco Corp. v. Zlotnicki*, 779 F.2d 906, 909 (3d Cir. 1985). In order to prevail on a motion for reconsideration, a party seeking reconsideration must demonstrate one of the following: (1) "an intervening change in the controlling law"; (2) the availability of new evidence that was not available when the court ruled on the motion; or (3) "the need to correct a clear error of law or fact or to prevent a manifest injustice." *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

A certificate of appealability is granted only if the petitioner shows "that jurists of reason

---

[2] The government previously asserted in the Court of Appeals that Williams' *pro se* motion fails to seek reconsideration or challenge the denial of the § 2255 motion and thus is not a proper motion for reconsideration. *See* Government Letter to Clerk of Court, *United States v. Williams*, No. 22-2611, ECF No. 14 at 3 (3d Cir. Oct. 9, 2022). Williams also filed a *pro se* letter in support of his motion on August 22, 2022, squarely challenging his § 924(c) conviction. *See* ECF No. 436. *Pro se* pleadings must be construed liberally. *See, e.g.*, *Lewis v. Att'y Gen.*, 878 F.2d 714, 722 (3d Cir. 1989). Read liberally, Williams' *pro se* motion is a motion for reconsideration. His *pro se* letter, ECF No. 436, is a supplement to the Rule 59 motion, or is a timely Rule 59 motion itself. *See, e.g.*, *United States v. Morales*, No. 20-2877, 2021 WL 5755079, *1 n.1 (3d Cir. Dec. 3, 2021) (government filing construed as supplement to Rule 59 motion). Williams' Counseled Memorandum in Support of Petitioner's Rule 59 Motion to Reconsider further supplemented the timely *pro se* motion. *See* ECF No. 450. *See also* Government's Response in Opposition to Defendant's Motion for Reconsideration of Denial of Relief Under 28 U.S.C. § 2255, ECF No. 451 at 2 n.1 ("In the interests of justice, the government does not object to consideration of counsel's filing on this basis [to supplement Williams' liberally construed *pro se* motion].").

would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *U.S. v. Doe*, 810 F.3d 132, 144 (3d Cir. 2015) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

Section 2255 empowers a court to "vacate, set aside or correct" a sentence that "was imposed in violation of the Constitution or laws of the United States." 28 U.S.C. § 2255(a). If a party is entitled to relief under § 2255(a), "the court shall vacate and set the judgment aside and shall discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." *Id.* § 2255(b).

## III.   DISCUSSION

Section 924(c) of Title 18 of the United States Code penalizes "any person who, during and in relation to any crime of violence . . . uses or carries a firearm." 18 U.S.C. § 924(c)(1)(A). The statute defines "crime of violence" as an offense that is a felony and

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

*Id*. § 924(c)(3). The first clause is known as the "elements" clause, and the second clause is called the "residual clause." In *United States v. Davis*, 139 S. Ct. 2319 (2019), the Supreme Court held that the residual clause of § 924(c) was unconstitutionally vague. Therefore, offenses that had previously been considered "crimes of violence" based on the residual clause are no longer "crimes of violence" and cannot serve as predicates for § 924(c). For that reason, all parties agree that Counts 1 and 2—conspiracy to commit Hobbs Act robbery and conspiracy to assault and kill federal agents—are not valid predicate "crimes of violence" for a § 924(c) conviction. *See* ECF No. 451 at 3.

To determine, however, whether a conviction meets the definition of "crime of violence" under the elements clause, courts employ the categorical approach, under which "[t]he only relevant question is whether the federal felony at issue always requires the government to prove – beyond a reasonable doubt, as an element of its case – the use, attempted use, or threatened use of force." *United States v. Taylor*, 142 S. Ct. 2015, 2020 (2022).

Courts apply the "modified categorical approach" when a statute has a divisible structure—that is, if it "comprises multiple, alternative versions of a crime." *United States v. Peppers*, 899 F.3d 211, 231 (3d Cir. 2018). Under the modified approach, the court may look to the indictment, the jury instructions, verdict forms, or plea agreements to determine for which of a divisible statute's crimes, and which elements, the defendant was convicted. *See Mathis v. United States*, 579 U.S. 500, 505–06, 517 (2016). The court may then evaluate if that more specific crime categorically qualifies as a "crime of violence."

Williams seeks relief from his 18 U.S.C. § 924(c) conviction. He argues that, like his conspiracy convictions in Counts 1 and 2, his other offenses—attempted murder in violation of 18 U.S.C. § 1114, and assault of federal agents in violation of 18 U.S.C. § 111—are not valid "crimes of violence." Those arguments are unavailing, as discussed below. Williams also argues that his § 924(c) conviction cannot stand because the record in his case does not make it possible to determine whether his § 924(c) conviction was supported by a valid predicate. *See* ECF Nos. 450, 456. Williams is correct. There is more than a "reasonable possibility" that the jury convicting Williams based the § 924(c) guilty verdict solely on an invalid predicate. *See Wilson*, 960 F.3d at 151. The trial court's error in instructing the jury that the § 924(c) conviction could rest on now-invalid predicates was not harmless. *See Brecht v. Abrahamson*, 507 U.S. 619, 623 (1993). Therefore, Williams' § 924(c) conviction cannot stand.

5

**A. Williams' Convictions under 18 U.S.C. § 1114 and 18 U.S.C. § 111 are Valid "Crimes of Violence."**

*1. Attempt to Kill Federal Agents in Violation of 18 U.S.C. § 1114 is a "Crime of Violence."*

Williams argues his conviction for attempted murder of federal agents, 18 U.S.C. § 1114, is not a "crime of violence," and therefore cannot validly support his § 924(c) conviction. *See* ECF No. 456 at 3. Section 1114 reads as follows in pertinent part:

> (a) In general. Whoever kills or attempts to kill any officer or employee of the United States or of any agency in any branch of the United States Government (including any member of the uniformed services) while such officer or employee is engaged in or on account of the performance of official duties, or any person assisting such an officer or employee in the performance of such duties or on account of that assistance, shall be punished -
> (1) in the case of murder, as provided under section 1111;
> (2) in the case of manslaughter, as provided under section 1112;
> (3) in the case of attempted murder or manslaughter, as provided in section 1113.

18 U.S.C. § 1114.

Williams argues that § 1114 is categorically overbroad under *United States v. Taylor*, 142 S. Ct. 2015 (2022), because § 1114 can be violated without the use, attempted use, or threatened use of physical force. *See* ECF No. 456 at 5. The Supreme Court in *Taylor* held that attempted Hobbs Act robbery did not qualify as a "crime of violence." 142 S. Ct. at 2021. *Taylor* turned on the specific statutory language of the Hobbs Act, which defines a "robbery" in relevant part as "the 'unlawful taking or obtaining of personal property from the person ... of another, against his will, by means of actual *or threatened* force.'" *Id*. at 2020 (quoting 18 U.S.C. § 1951(b)(1); emphasis added). Because a completed Hobbs Act robbery does not require the use of "actual ... force" but can instead be committed by means of mere "threatened force," 18 U.S.C. § 1951(b)(1), it follows that an attempted Hobbs Act robbery can be committed by a mere *attempt to threaten force*, which, *Taylor* held, is not "the use, attempted use, or threatened use of physical force against the person

or property of another." 18 U.S.C. § 924(c)(3)(A); 142 S. Ct. at 2019.

Unlike the offenses of completed and attempted Hobbs Act robbery discussed in *Taylor*, completed and attempted murder under § 1114 *do* require the actual use of force. Although the Third Circuit has yet to weigh in on this issue, other authorities persuasively show that attempted murder under § 1114 continues to constitute a "crime of violence." *See United States v. Mejia*, No. CR 05-32-1, 2022 WL 13801066, at *6 (E.D. Pa. Oct. 21, 2022) (holding attempted murder under § 1114 is categorically a "crime of violence" under § 924(c)(3)(A)). The Supreme Court defines "physical force" as "simply force exerted by and through concrete bodies, as opposed to intellectual force or emotional force." *United States v. Castleman*, 572 U.S. 157, 170 (2014). "To kill necessarily requires that one utilize 'force capable of causing physical pain or injury to another person' as required by [*Johnson v. United States*, 559 U.S. 133, 140 (2010)], rendering murder a crime of violence under § 924(c)." *United States v. Smith*, No. CR 99-445, 2022 WL 541608, at *2 (E.D. Pa. Feb. 23, 2022), *vacated and remanded on other grounds*, No. 22-1738, 2022 WL 16570531 (3d Cir. Aug. 12, 2022). "Quintessential violent crimes," like "murder, assault, battery, rape, etc. involve the intentional use of force." *Oyebanji v. Gonzales*, 418 F.3d 260, 264 (3d Cir. 2005). "[W]here a crime of violence requires the use of physical force . . . the corresponding attempt to commit that crime necessarily involves the attempted use of force." *United States v. Taylor*, 979 F.3d 203, 209 (4th Cir. 2020), *aff'd*, 142 S. Ct. 2015 (2022). Accordingly, the offense of attempted murder in violation of § 1114 requires the use, attempted use, or threatened use of force, and therefore qualifies as a "crime of violence" under § 924(c)(3)(A).

Next, Williams argues that § 1114 is an invalid predicate because it can be violated with less than an intentional *mens rea*. *See* ECF No. 452 at 2–3; ECF No. 456 at 3–5. In *Borden v. United States*, 141 S. Ct. 1817 (2021), the Supreme Court held that crimes that can be committed

recklessly do not satisfy the elements clause of the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e)(2)(B)(i), which is nearly identical to the elements clause of § 924(c). 141 S. Ct. at 1834.

At Williams' trial, the jury was charged that the government must prove "[t]hat acting deliberately and intentionally or recklessly with extreme disregard for human life, the defendant attempted to kill the FBI Agents named in the Indictment." ECF No. 337 at 30. Therefore, the least culpable mental state required for conviction was "reckless[ness] with extreme disregard for human life." *Id. Borden* left open the question of whether offenses requiring a mental state of "extreme recklessness" satisfy the elements clause and therefore qualify as "crimes of violence." 141 S. Ct. at 1825 n.4. Since *Borden*, more Circuits have agreed that a crime committed with extreme recklessness qualifies. *See United States v. Manley*, 52 F.4th 143, 150–51 (4th Cir. 2022); *United States v. Harrison*, 54 F.4th 884, 890 (6th Cir. 2022); *United States v. Begay*, 33 F.4th 1081 (9th Cir. 2022) (en banc); *Alvarado-Linares v. United States*, 44 F.4th 1334, 1343–44 (11th Cir. 2022). This question remains open in the Third Circuit, however. *See United States v. Henderson*, 80 F.4th 207, 212 n.5 (3d Cir. 2023).

Williams further argues that the *mens rea* element of § 1114 invalidates it as a "crime of violence" because § 1114 can be violated on a felony murder theory. *See* ECF No. 456 at 3–4. Under a felony murder theory, "only the *mens rea* necessary to attempt or complete the underlying felony (i.e., arson, escape, etc.)" is required. *Id.* (quoting *United States v. Jackson*, 32 F.4th 278, 285 (4th Cir. 2022)). If that *mens rea* is mere recklessness, then it fails to satisfy *Borden*.

In support of his argument, Williams notes that the jury at his trial was charged that the government must prove "that the defendant acted with malice aforethought or that the defendant committed this attempted killing during the perpetration of or attempt to perpetrate the conspiracy

to commit an armed robbery." ECF No. 335 at 47; ECF No. 337 at 30.[3] As stated above, Williams' jury was also charged that the government must prove that Williams acted at least "recklessly with extreme disregard for human life." ECF No. 337 at 30. Therefore, a conviction based on mere recklessness was not permitted, nor could the jury have convicted based merely on the attempted killing having occurred during the perpetration of the underlying felony. *See* ECF No. 457 at 2–3.

But, as discussed further below in Section III.B., even if Williams were to prevail that "recklessness with extreme disregard for human life" is not a sufficient mental state for a § 1114 violation to qualify as a "crime of violence," it is not clear that § 1114 was the predicate upon which the jury based the § 924(c) conviction.

### 2. *Assaulting Federal Agents with a Deadly Weapon in Violation of 18 U.S.C. § 111 is a "Crime of Violence."*

Williams argues that his conviction for assaulting federal agents with a deadly weapon, 18 U.S.C. § 111(b), is not a "crime of violence." *See* ECF No. 456 at 6–7. Section 111 reads in relevant part:

> (a) In general. Whoever –
> (1) forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties ...
> shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned for not more than one year, or both, and where such acts involve physical contact with the victim of that assault or the intent to commit another felony, be fined under this title or imprisoned not more 8 years, or both.
> (b) Enhanced penalty. – Whoever, in the commission of any acts described in subsection (a), uses a deadly or dangerous weapon (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

---

[3] Williams challenged this jury instruction at trial and on direct appeal, and the Third Circuit affirmed. *United States v. Williams*, No. 98-1130, slip op. at 6 (3d Cir. Nov. 10, 1998).

18 U.S.C. § 111. In *United States v. Bullock*, 970 F.3d 210 (3d Cir. 2020), the Third Circuit held

that § 111(b) satisfies the elements clause of § 924(c)(3)(A). 970 F.3d at 215–17. Williams argues

that *Bullock* cannot stand following *Taylor* because it is possible to "attempt to threaten" in

violation of that statute without actually uttering a threat or engaging in violence. *See* ECF No.

456 at 6–7; *Taylor*, 142 S. Ct. at 2023.

Because § 111 provides for different punishments under subsections (a) and (b) such that

subsection (b) is a different offense from subsection (a), it is divisible, and therefore the modified

categorical approach applies. *See Bullock*, 970 F.3d at 214. Because the record shows that

Williams was convicted of completed assault under § 111(b), *see* ECF No. 335 at 32, only that

offense is at issue, and Williams' arguments concerning the use of force for *attempted* assault are

irrelevant. Joining six other Circuits[4] to so hold, the Third Circuit in *Bullock* held completed assault

under § 111(b) is categorically a "crime of violence." 970 F.3d at 215–17. Therefore, *Bullock*

controls here.

### 3. *Williams' convictions based on an aiding and abetting theory of liability are valid "crimes of violence."*

Williams argues that his § 1114 and § 111 convictions were based on an aiding and abetting

theory of liability, and under that theory, these crimes are not valid "crimes of violence" and cannot

serve as predicates for § 924(c). *See* ECF No. 450 at 5.[5] In *United States v. Stevens*, 70 F.4th 653

(3d Cir. 2023), the Third Circuit held that aiding and abetting completed Hobbs Act robbery is a

---

[4] *United States v. Taylor*, 848 F.3d 476 (1st Cir. 2017); *Gray v. United States*, 980 F.3d 264 (2d Cir. 2020); *United States v. Hernandez-Hernandez*, 817 F.3d 207 (5th Cir. 2016); *United States v. Rafidi*, 829 F.3d 437 (6th Cir. 2016); *United States v. Kendall*, 876 F.3d 1264 (10th Cir. 2017); *United States v. Bates*, 960 F.3d 1278 (11th Cir. 2020).

[5] For this argument, Williams points to *United States v. Stoney*, 62 F.4th 108, 112–13 (3d Cir. 2023), where the Third Circuit granted a certificate of appealability "on the issue of whether aiding and abetting Hobbs Act robbery and Hobbs Act robbery based on Pinkerton liability qualify as crimes of violence under 18 U.S.C. § 924(c)(3)(A)." *See* Order, *United States v. Stoney*, No. 21-1784 (3d Cir. Feb. 11, 2022). This issue was not addressed in the Third Circuit's decision in *Stoney,* however, because "there is no question that Stoney personally committed a completed Hobbs Act robbery, [so] these theories of liability are not relevant." *United States v. Stoney*, 62 F.4th 108, 112–13 (3d Cir. 2023).

"crime of violence" under § 924(c). 70 F.4th at 662. In doing so, *Stevens* held that "where the underlying substantive offense includes, as an element, the use of physical force, that same physical force is necessarily an element of aiding and abetting liability." *Id.* at 661–62. This is so even though the force does not come from the abettor personally. *See id.* at 662; ECF No. 458. Accordingly, *Stevens* controls and Williams' convictions based on an aiding and abetting theory of liability are valid "crimes of violence."

**B. There is more than a "reasonable possibility" that Williams' § 924(c) conviction was based solely on an invalid predicate.**

Despite the above analysis confirming that Williams' convictions for § 1114 and § 111 are valid "crimes of violence," the key question remains whether the specific predicate upon which Williams' § 924(c) conviction was based is a valid "crime of violence." Williams argues that his § 924(c) conviction must be vacated because the offenses upon which the jury could have based his § 924(c) conviction include both valid and invalid predicates. *See* ECF No. 450 at 6–9; ECF No. 426 at 5–7. Indeed, the jury at Williams' trial was charged that to convict on the § 924(c) charge, Count 8, any one of the other offenses charged in Counts 1-6 could serve as the predicate "crime of violence." *See* ECF No. 335 at 58. Critically, the government presented two distinct theories under which the jury could convict on Count 8. The first theory involved Williams carrying firearms during and in relation to the Count 1 conspiracy to commit Hobbs Act robbery, a now-invalid predicate. *See* ECF No. 335 at 6, 60–61, 69–70. The second theory involved Williams aiding and abetting the use of firearms by his co-conspirators during and in relation to Counts 2-6, which includes an invalid predicate (Count 2) and valid predicates (Counts 3-6). *Id*. Despite the jury being asked to select between these two theories and unanimously agree on a single predicate "crime of violence," *see* ECF No. 335 at 58–59, Williams was convicted based on

a general verdict. *See* Jury Verdict Sheet, ECF No. 288.

### 1. *Harmless Error Standard*

"A conviction based on a general verdict is subject to challenge if the jury was instructed on alternative theories of guilt and may have relied on an invalid one." *Hedgpeth v. Pulido*, 555 U.S. 57, 58 (2008) (per curiam) (citations omitted). This rule is derived from *Stromberg v. California*, 283 U.S. 359 (1931), which stands for "the principle that, where a provision of the Constitution forbids conviction on a particular ground, the constitutional guarantee is violated by a general verdict that may have rested on that ground." *Griffin v. United States*, 502 U.S. 46, 53 (1991). "[A] general verdict may be set aside 'where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected.'" *Black v. United States*, 561 U.S. 465, 470 (2010) (quoting *Yates v. United States*, 354 U.S. 298, 312 (1957)).

As discussed, the conspiracies charged in Counts 1 and 2 are no longer considered crimes of violence. Consequently, the district court committed a *Stromberg* error when it instructed the jury that it could convict Williams of violating § 924(c) by relying on either Counts 1 or 2. Moreover, the presentation to the jury of the first theory—based solely on Count 1—was likewise erroneous. When a defendant seeks federal habeas relief under § 2255 based on a *Stromberg* error, courts evaluate whether the constitutional error was harmless under the standards articulated by the Supreme Court for the analogous state habeas context in *Brecht v. Abrahamson*, 507 U.S. 619, 631 (1993). *See Hedgpeth v. Pulido*, 555 U.S. 57, 61 (2008) (applying *Brecht* in state habeas case where defendant sought relief for *Stromberg* error). While *Brecht* arose in the context of federal habeas review of state criminal convictions, the Third Circuit has extended *Brecht*'s standard to § 2255 motions. *See United States v. Bentley*, 49 F.4th 275, 289 n.9 (3d Cir. 2022), *cert. denied,* 143 S. Ct. 787 (2023).

*Brecht* held that the harmless error standard articulated in *Kotteakos v. United States*, 328 U.S. 750 (1946) applies when determining whether habeas relief must be granted due to constitutional errors. 507 U.S. at 638. "The test under *Kotteakos* is whether the error 'had substantial and injurious effect or influence in determining the jury's verdict.'" *Id.* at 637 (quoting *Kotteakos*, 328 U.S. at 776). *Kotteakos* expounded on the harmless error standard as follows:

> If, when all is said and done, the [court] is sure that the error did not influence the jury, or had but very slight effect, the verdict and the judgment should stand .... But if one cannot say, with fair assurance, after pondering all that happened without stripping the erroneous action from the whole, that the judgment was not substantially swayed by the error, it is impossible to conclude that substantial rights were not affected. The inquiry cannot be merely whether there was enough to support the result, apart from the phase affected by the error. It is rather, even so, whether the error itself had substantial influence. If so, or if one is left in grave doubt, the conviction cannot stand.

328 U.S. at 764. The Supreme Court has instructed that "[w]hen a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless. And, the petitioner must win." *O'Neal*, 513 U.S. at 436. "Grave doubt" means that the court feels itself "in virtual equipoise as to the harmlessness of the error." *Id.* at 435. *See United States v. Saybolt,* 577 F.3d 195, 206 (3d Cir. 2009) ("An error is harmless when it appears beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." (quoting *Neder v. United States,* 527 U.S. 1, 15 (1999)) (internal quotation marks omitted)). There must be more than a "reasonable possibility" that the error was harmful. *Brecht*, 507 U.S. at 637.

The government contends that Williams' argument is foreclosed by *United States v. Wilson*, 960 F.3d 136, 151 (3d Cir. 2020), in which defendants' § 924(c) convictions could have been based the now-invalid predicate of conspiracy to commit armed bank robberies and/or two counts of the still-valid predicate of armed bank robbery. *See* ECF No. 451 at 6–9. The Third

Circuit held that any error in instructing the jury that conspiracy to commit bank robbery qualifies as a "crime of violence" was harmless because "we can tell from the verdict form, as well as from the evidence presented at trial, that there is no 'reasonable possibility' that the jury based its § 924(c) convictions only on the conspiracy as opposed to the bank-robbery counts." 960 F.3d at 151 (quoting *United States v. Duka*, 671 F.3d 329, 356 (3d Cir. 2011)).

Following *Wilson*, we look to the verdict form and to the evidence presented at trial to determine whether there was a reasonable possibility that the jury based Williams' § 924(c) conviction solely on an invalid predicate. As the Supreme Court has instructed, if "record review leaves the conscientious judge in grave doubt about the likely effect of an error on the jury's verdict," the error should be treated as if it affected the verdict. *O'Neal*, 513 U.S. at 435. From the below analysis of the trial record, I have grave doubt about the effect of the *Stromberg* errors in this case, and therefore the errors are not harmless.

### 2. *Williams' Trial Record Reveals Error was Not Harmless*

At Williams' trial, the jury was instructed that the offenses charged in Counts 1-6—conspiracy to commit Hobbs Act robbery (Count 1), conspiracy to assault and kill federal agents (Count 2), attempted killing of an FBI agent (Counts 3 and 4), assault on an FBI agent (Counts 5 and 6)—"are each crimes of violence." ECF No. 335 at 56. Therefore, any one of the Counts 1-6 could serve as a predicate for Count 8, which charged Williams with having "used or carried a firearm during and in relation to a crime of violence." ECF No. 335 at 56. The jury was instructed that to convict on Count 8, "[i]t is sufficient if you find beyond a reasonable doubt that the defendant knowingly used and carried a firearm during and in relation to anyone [sic] of the underlying crimes of violence." *Id*. at 58.

The government presented two distinct theories under which the jury could convict for

Count 8. The first theory proposed that Williams violated § 924(c) by carrying two .38 caliber revolvers on his person during and in relation to Count 1, the conspiracy to commit Hobbs Act robbery from on or about March 1993 to on or about March 16, 1994. *See* ECF No. 335 at 6, 60–61, 69–70; ECF No. 339 at 105–06.[6] The second theory proposed that Williams violated § 924(c) by aiding and abetting the use of different guns by his co-conspirators during and in relation to a shootout with law enforcement on March 16, 1994, in connection with Counts 2-6. *See* ECF No. 335 at 6, 60–61, 69–70; ECF No. 339 at 105–06. While the first theory involved only the *carrying* of firearms, the second theory involved the *use* of firearms.[7] Accordingly, the jury was instructed that "the government only has to show that during and in relation to the crime involved the defendant *used or carried* a firearm, not that he did both." ECF No. 335 at 56–57. Further, the jury was charged that:

> If you find the defendant guilty, you must unanimously agree on the *underlying crime of violence*, and you must unanimously agree on *which gun the defendant used and carried in relation to that crime of violence*. In other words, you may not find the defendant guilty if only some of you agree that the defendant used and carried a particular firearm and the rest of you agree that the defendant possessed a different firearm. You must be in agreement as to the firearm in order to find the defendant guilty. And you must be in agreement as to which crime of violence in order to find him guilty.

ECF No. 335 at 58–59 (emphasis added). Accordingly, the jury was instructed that, to find

---

[6] The government stated to the trial court: "We believe it should be submitted to the jury solely on the theory that the two guns in the pocket were carried during and in relation to the conspiracy to commit Hobbs Act robbery." ECF No. 335 at 6. Similarly, defense counsel explained to the jury: "In order for you to find a verdict of guilty on the gun charge in this case, you would first have to find one of two things . . . [Y]ou would have had to have found out that these people conspired to rob drug dealers and that this defendant used these loaded guns and carried them in connection with the Hobbs Act [Count 1]. . . . With respect to Counts 2 through 6, the [only] way you could find him guilty of [Count 8] would be if you believed that Melvin Williams gave Termaine Jackson and/or Mr. Lipscomb the guns for the purpose of attempting to kill the FBI agents." ECF No. 339 at 105–06.

[7] As the government explained at trial, "the carrying prong refers to Count One and that the use prong refers to Counts Two through Six." *See* ECF No. 335 at 65. This distinction drawn at trial between the firearms associated with Count 1 and those associated with Counts 2-6 clearly undermines the government's argument in opposition to this present Motion that any uncertainty regarding which predicate(s) supported Williams' § 924(c) conviction is harmless because "firearms were plainly used in furtherance of all of the predicate crimes for which Williams was charged and convicted." *See* ECF No. 451 at 10.

Williams guilty on Count 8, not only must it select between two independent theories involving carrying or use of a firearm, but it must also identify the specific underlying "crime of violence" and the specific firearm used or carried. On the jury verdict sheet, however, the jury merely placed a check in the guilty column next to Count 8, described on the verdict sheet as "Using and Carrying a Firearm During and in Relation to a Crime of Violence." ECF No. 288.

Based on the record, it is not possible to determine whether the jury predicated Williams' § 924(c) conviction on the first theory—carrying two guns in relation to Count 1—or the second theory—aiding and abetting the use of different guns in relation to any one of the remaining Counts 2-6. If the jury predicated the guilty verdict in Count 8 on the first theory, then Williams' § 924(c) conviction was based solely on the indisputably invalid predicate of conspiracy to commit Hobbs Act robbery.

The error in instructing the jury to consider the first theory had a "substantial and injurious effect or influence." *Brecht*, 507 U.S. at 638. The evidence presented at trial strongly supported a conviction based on the invalid first theory. The jury was charged that, for both theories under Count 8, "[t]he government is required to prove that the firearm was in the defendant's possession or under defendant's control at the time that a crime of violence was committed. The government must prove that the firearm furthered the commission of the crime or was an integral part of the underlying crime being committed." ECF No. 335 at 57. These elements were simple to find under the first theory given that the Parties stipulated at trial that Williams was carrying the two relevant guns on March 16, 1994. ECF No. 333 at 125. Moreover, as defense counsel stated, "by the defendant's own admissions in his statements to the police and the FBI [the two guns Williams carried] were part of the plan to commit the armed robbery." ECF No. 335 at 9.

By contrast, a jury finding that the firearms at issue under the second § 924(c) theory were

"in the defendant's possession or under defendant's control," ECF No. 335 at 57, may have been complicated by the fact that those firearms were not found in his possession and were not fired by him.[8] *See* ECF No. 335 at 6. At trial, defense counsel expressed concern that the jury might base a § 924(c) conviction on the guns Williams admittedly carried in relation to the first theory, *even if the jury convicted Williams under the second theory*. *See* ECF No. 335 at 60–61; *see also id*. at 67 ("It's important that they understand. Because it's undisputed that he had two guns in his pocket, but that does not constitute a violation of Count Eight with regard to the conspiracy to kill the agents [Count 2]."). That is, the jury might have confused which firearms related to which crimes of violence, and therefore might mix and match a predicate "crime of violence" and predicate firearm to reach a § 924(c) conviction. As defense counsel summarized, "I think it's so confusing which [guns] were carried for what." *Id.* at 60.

Williams' general verdict does not reveal which gun was the predicate firearm upon which the § 924(c) conviction was based. The Third Circuit grappled with this kind of uncertainty resulting from a general verdict in *United States v. Theodoropoulos*, 866 F.2d 587, 597–98 (3d Cir. 1989), *overruled on other grounds by United States v. Price*, 76 F.3d 526 (3d Cir. 1996). In *Theodoropoulos*, the jury was instructed that it could base a § 924(c) conviction on any of four firearms. 866 F.2d at 597. The Third Circuit held that "[s]ince the jury's general verdict does not reveal which of the guns the jury had concluded he had used during the conspiracy, we can uphold the verdict only if all of those firearms can be deemed to have been used in the […] conspiracy." *Id*. After holding that three of those four firearms did not qualify as predicate firearms because

---

[8] As discussed above, *United States v. Stevens*, 70 F.4th 653 (3d Cir. 2023) held that a conviction based on an aiding and abetting theory of liability can be a valid "crime of violence." 70 F.4th at 661–62. But given that the jury was asked to select one theory under which to convict Williams for violating § 924(c), it is entirely plausible that the jury considered the firearms that Williams admittedly carried in relation to Count 1 as more strongly supporting a § 924(c) conviction than the firearms used under an aiding and abetting theory of liability in relation to one of the offenses charged in Counts 2-6.

they were not "carried" or "used,"[9] the Third Circuit vacated the § 924(c) conviction because the court could not "exclude the possibility that the jury convicted [defendant] solely on the basis of one or more of the weapons" that did not qualify as valid predicate firearms under § 924(c). *Id.* at 598. The same result is required here, where the court cannot not exclude the possibility that the jury convicted Williams solely on the basis of non-qualifying predicate crimes or non-qualifying firearms.

While it is possible that the jury could have predicated Williams' conviction only on the valid predicates in Counts 3-6, or that a properly instructed jury may have convicted Williams based on those Counts, the Third Circuit has made clear that courts applying *Brecht* in the context of constitutional trial errors may not "deny relief based on the probability of conviction on retrial." *Bentley*, 49 F.4th at 283. "*Brecht* instead calls on reviewing courts to determine whether an error substantially affected the *actual* jury's verdict based on the entire trial record." *Id*. The question here is not whether there was enough to support the guilty verdict absent the *Stromberg* errors. Indeed, as the Supreme Court has instructed, "[w]e are not authorized to look at the printed record, resolve conflicting evidence, and reach the conclusion that the error was harmless because we think the defendant was guilty. That would be to substitute our judgment for that of the jury and, under our system of justice, juries alone have been entrusted with that responsibility." *Weiler v. United States*, 323 U.S. 606, 611 (1945); *see Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993) ("[T]o hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the findings to support that verdict might be—would violate the jury-trial guarantee."); *see also*

---

[9] The Third Circuit's interpretation of the term "use" in § 924(c)(1) in *Theodoropoulos*—necessary for determining that three of the firearms did not qualify as predicate firearms, *see* 866 F.2d at 597–98—was rejected by the Supreme Court in *Bailey v. United States*, 516 U.S. 137, 143–44 (1995). Accordingly, in *United States v. Price*, 76 F.3d 526 (3d Cir. 1996), the Third Circuit recognized that *Theodoropoulos* "no longer governs" the interpretation of the term "use." 76 F.3d at 528.

2–31 Randy Hertz & James S. Liebman, *Federal Habeas Corpus Practice and Procedure* § 31.4(d) (2017) ("The determinative consideration under the *Brecht*/*Kotteakos* standard thus is not the strength of the evidence or the probability of conviction at a hypothetical retrial absent the error," but rather "whether the error substantially affected the actual thinking of the jurors or the deliberative processes by which they reached their verdict."); *United States v. Capers*, 20 F.4th 105, 128 (2d Cir. 2021) (vacating § 924 convictions "not because [defendant] necessarily should be exonerated as a matter of law of the crime charged, but rather because an erroneous jury instruction makes it impossible to be confident that the jury convicted him on an appropriate set of findings."). It is particularly important that courts not usurp the role of juries in assessing the harmlessness of *Stromberg* errors in § 924(c) convictions because of the sentencing enhancements that accompany such convictions. *See United States v. Lewis*, 802 F.3d 449, 454 (3d Cir. 2015) (en banc) (explaining a criminal defendant has a fundamental right "to have the jury, not the judge, find such facts" that increase the mandatory minimum (discussing *Alleyne v. United States*, 570 U.S. 99 (2013)).

Following *Brecht*, upon analyzing the actual verdict rendered—without hypothesizing about what the jury could have found absent the *Stromberg* errors—there is more than a "reasonable possibility" that the *Stromberg* errors were harmful. *Brecht*, 507 U.S. at 637. As there is no way to determine from the record whether the jury relied on Count 1 or one of the offenses in Counts 2-6 as the predicate offense for Count 8, I have "grave doubt" that the errors substantially influenced the jury's decision to convict Williams of violating § 924(c). *See O'Neal*, 513 U.S. at 436. Therefore, the errors were not harmless.

### 3. *United States v. Wilson is Distinguishable*

The government asserts that *United States v. Wilson*, 960 F.3d 136 (3d Cir. 2020)

forecloses Williams' argument concerning the uncertainty of which predicate underpinned his § 924(c) conviction. *See* ECF No. 451 at 7 n.3 ("The situation in this case is identical to and controlled by the Third Circuit's decision in *Wilson*."). This is incorrect. The government interprets *Wilson* as standing for the proposition that "it is irrelevant that the 924(c) count referred to a conspiracy charge that is not a valid predicate [if] the 924(c) charge was *squarely grounded on valid predicate charges* as well of which the defendant was convicted." ECF No. 451 at 3 (emphasis added). According to that argument, because Williams was convicted on all charges like the defendants in *Wilson*, there is no "reasonable possibility" that the jury "rested the 924(c) firearm charge only on a conspiracy and not the substantive acts." *See* ECF No. 451 at 8. *See also Parker v. United States*, 993 F.3d 1257, 1265 (11th Cir. 2021) ("[T]he record in this case makes clear that if the jury relied on the invalid Hobbs Act conspiracy predicate, it also relied on the valid drug trafficking predicates. The inclusion of Hobbs Act conspiracy as a potential predicate was therefore harmless."); *Sessa v. United States*, No. 20-CV-1957, 2020 WL 3451657, at *5 (E.D.N.Y. June 24, 2020), *aff'd*, No. 20-2691, 2022 WL 1179901 (2d Cir. Apr. 21, 2022) ("No rational jury would return a verdict of guilty on a § 924(c) charge predicated on two conspiracies to commit murder with a firearm and the substantive offense of murder committed with a firearm, and not return the same verdict if predicated only on the murder committed with a firearm."). Williams' counsel previously conceded that this argument was foreclosed by *Wilson*. *See* ECF No. 425 at 2–3. Williams disagreed and preserved the argument in a *pro se* motion. *See* ECF No. 426 at 6.

  Williams' situation is distinguishable from *Wilson*. In *Wilson*, the defendants were convicted on five counts:

> Conspiracy to commit armed bank robbery from in or about October 2013 through in or about November 2013 [Count 1] …

> Armed bank robbery on or about November 4, 2013 [Count 2] …
> Using or carrying a firearm during any crime of violence on or about November 4, 2013 [Count 3] …
> Armed bank robbery on or about November 12, 2013 [Count 4] […]
> Using or carrying a firearm during any crime of violence on or about November 12, 2013 [Count 5].

*United States v. Wilson*, No. 14-209, ECF No. 190. The jury was instructed that Counts 1, 2, and 4 were all "crimes of violence" upon which the § 924(c) charges in Counts 3 and 5 could be based. *Wilson*, No. 14-209, ECF No. 225 at 42. *Wilson*'s Count 1 conspiracy is no longer a "crime of violence" and cannot serve as a predicate for § 924(c), whereas armed bank robbery, charged in Counts 2 and 4, is a "crime of violence." *See Wilson*, 960 F.3d at 151. On appeal to the Third Circuit, the *Wilson* defendants argued that the trial court should not have instructed the jury that conspiracy to commit bank robbery qualifies as a "crime of violence." *Id*. The Third Circuit rejected this challenge, finding that "any error was harmless" because, based on the trial court record, "there is no 'reasonable possibility' that the jury based its § 924(c) convictions only on the conspiracy as opposed to the bank-robbery counts." *Id*. (quoting *United States v. Duka*, 671 F.3d 329, 356 (3d Cir. 2011)).

Upon examination of the *Wilson* jury verdict forms and the way the charges were discussed at the *Wilson* trial, it is clear that the *Wilson* defendants' § 924(c) convictions (Counts 3 and 5) were squarely grounded on and tied to the valid predicate charges of armed robbery (Counts 2 and 4). *See Wilson*, No. 14-209, ECF No. 224 at 252 ("Count 2 is armed bank robbery with regard to the November 4, 2013 robbery. Count 3 is a firearms charge related to that armed bank robbery. . . . Count 4 is the second bank robbery, the November 12, 2013 robbery, and Count 5 is the second firearms charge, carrying and using a firearm during and in relation to the second bank robbery."). There was significant factual overlap between the conspiracy (Count 1) and the two bank robberies (Counts 3 and 5), and the jury found defendants guilty on all charges. *See Wilson*, No. 14-209,

21

ECF Nos. 27, 190. On these facts, no rational jury would have found guilt on both Counts 3 and 5 predicated solely on the Count 1 conspiracy to commit armed robbery, while simultaneously finding defendants guilty on two counts of armed robbery. Even if the jury predicated Count 3 on both Count 1 (invalid) and Count 2 (valid), Count 3 would still have been predicated on one valid and sufficient "crime of violence." Similarly for Count 5, if it was predicated on both Count 1 (invalid) and Count 4 (valid), one valid predicate remains.

Unlike *Wilson*, is it not clear whether Williams' § 924(c) conviction was, in the government's words, "squarely grounded on valid predicate charges." ECF No. 451 at 3. We do not know whether Williams' § 924(c) conviction was premised solely on an invalid predicate (Count 1) under the first theory, solely on an invalid predicate (Count 2) under the second theory, solely on a valid predicate (Counts 3-6) under the second theory, or some combination of valid and invalid predicates under the second theory. Had Williams' jury *only* been presented with the second theory, Williams' case would closely mirror *Wilson*, as defendants in both cases were found guilty of an invalid conspiracy and valid substantive offenses, either of which could have been used by the jury to form the basis for a § 924(c) conviction. But *Wilson* does not address the additional complexity that Williams poses arising from the first theory, under which a *single invalid predicate* may have served as the *only* predicate underlying the § 924(c) conviction.

Williams argues that his situation is distinguishable from *Wilson* and points to several out-of-Circuit cases that consider whether to vacate § 924(c) convictions that may have been predicated on invalid "crimes of violence" by assessing whether the valid and invalid predicates were "inextricably intertwined." *See* ECF No. 450 at 6–9. Under this "inextricably intertwined" test, when there is a *Stromberg* error arising from a § 924(c) conviction that could rest on either a valid or an invalid predicate offense, the error is harmless if "the trial record makes clear that the [valid

and invalid predicates] were so inextricably intertwined that no rational juror could have found that [defendants] carried a firearm in relation to one predicate but not the other." *United States v. Cannon*, 987 F.3d 924, 948 (11th Cir. 2021); *see also Granda v. United States*, 990 F.3d 1272, 1293 (11th Cir. 2021) (*Stromberg* error harmless where drug trafficking conspiracy (valid) and Hobbs Act robbery conspiracy (invalid) were inextricably intertwined as both based on plan to steal and resell drugs using guns). In *United States v. Vasquez*, 672 F. App'x 56 (2d Cir. 2016), the defendant was convicted of §§ 924(c) and (j) charges predicated on conspiracy to commit Hobbs Act robbery (invalid predicate) and a narcotics conspiracy (valid predicate). 672 F. App'x at 60. The Second Circuit sustained the convictions because the *sole* theory presented at trial to support the § 924 convictions was that a co-conspirator fatally discharged a firearm "to rob drug dealers and to distribute any recovered narcotics." *Id*. at 61. The court noted that, though the defendant in *Vasquez* "hypothesizes a way in which the firearms discharge and resulting murder could have related to the robbery, but not the narcotics conspiracy, he points to nothing in the record showing that such distinct theories were ever advanced at trial." *Id*. Accordingly, because "the robbery was an act inextricably intertwined with and, indeed, in furtherance of the charged narcotics conspiracy," the § 924 convictions were "clearly supported by a [valid] narcotics predicate." *Id*.

By contrast, when an invalid predicate is not "inextricably intertwined" with a valid predicate, a § 924(c) conviction cannot stand. For instance, in *United States v. Heyward*, 3 F.4th 75 (2d Cir. 2021), the Second Circuit vacated a § 924(c) conviction on plain error review where the defendant was convicted of both a racketeering conspiracy in Count 1 (invalid predicate)— which itself involved both conspiracy to murder (invalid predicate) and conspiracy to distribute narcotics (valid predicate)—and a narcotics conspiracy (valid predicate) in Count 2. 3 F.4th at 77.

The verdict sheet asked the jury to determine whether the defendant possessed or used a firearm during *either* of the conspiracies in Counts 1 and 2 in violation of § 924(c), and the jury found the defendant guilty. *Id*. at 85. Further complicating matters, the jury specially found that the firearm was discharged with respect to the Count 1 racketeering conspiracy, and not with respect to the Count 2 narcotics conspiracy, but the jury did not specify whether the firearm discharged with respect to the racketeering conspiracy pertained to the murder or the narcotics conspiracies within Count 1. *Id*. at 85. "Because the bulk of the firearms evidence was tied to gang violence that a jury reasonably could find was separate from any narcotics activity," the Second Circuit held that the murder and drug conspiracies within Count 1 were not "inextricably intertwined." *Id*. at 84. Accordingly, the court could not conclude that the jury had not improperly found the discharge of the firearm pertained solely to the invalid murder conspiracy, leaving the court "with a distinct uncertainty as to the propriety of his conviction," and requiring that the § 924(c) conviction be vacated. *Id*. at 85.

There is a conflict, however, between this "inextricably intertwined" test and the *Brecht*/*Kotteakos* harmless error standard. Under the "inextricably intertwined" test, if there is enough to support the ultimate result, that is the end of the inquiry and the error is harmless per se, whereas "the *Brecht*/*Kotteakos* harmless-error standard places the focus where it should be—on the *Stromberg* error's impact on the jury." *Baugh v. United States*, 64 F.4th 779, 787 (6th Cir. 2023) (Mathis, J., dissenting). The Third Circuit has not applied this "inextricably intertwined" test in this context, and the *Brecht*/*Kotteakos* harmless error standard applied above controls.

But even if the inextricably intertwined test is applied, the *Stromberg* errors in this case are not harmless. The *Stromberg* errors here could only be deemed harmless if the valid predicates in Counts 3-6 and the now-invalid conspiracy offenses in Counts 1-2 were inextricably intertwined.

24

But the fact that these Counts were presented to the jury based on two distinct theories for how different firearms were either used or carried for distinct crimes undercuts any claim that the predicates are inextricably intertwined. *Cf. Vasquez*, 672 F. App'x at 61 (sustaining convictions where no theory was advanced at trial to support finding firearms discharge was related only to invalid predicate, but not valid predicate). As Williams argues, Count 1 is conceptually distinct from the other charges because it is the only charge based on his own guns, while Counts 3 through 6 are conceptually distinct because they are based on an aiding-and-abetting theory and a separate incident. *See* ECF No. 450 at 9; ECF No. 335 at 69. If Count 1 were inextricably intertwined with Counts 2-6, the government could not have conceded, as it did, that the two guns carried by Williams were *only* carried in relation to the conspiracy to commit Hobbs Act robbery, and *not* in relation to the other charges. *See* ECF No. 335 at 6–7.

In sum, *Wilson* directs this court to analyze Williams' verdict sheet and trial record to evaluate whether there was any "reasonable possibility" that the jury based its § 924(c) convictions only on an invalid predicate. While such a possibility did not exist in *Wilson*, there is more than a "reasonable possibility" that Williams' verdict was not squarely grounded on valid predicates, and thus the *Stromberg* errors were not harmless.

## IV. CONCLUSION

For the foregoing reasons, Williams has shown a "need to correct a clear error of law or fact or to prevent a manifest injustice," as required under Rule 59. *Max's Seafood Café ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). While Williams' convictions for attempted murder and assault under § 1114 and § 111 remain valid predicate crimes of violence, the general verdict rendered in this case leaves "grave doubt" as to whether his § 924(c) conviction was predicated on a valid "crime of violence." *See O'Neal*, 513 U.S. at 436. There is more than a

"reasonable possibility" that the *Stromberg* errors "had substantial influence" on the jury's verdict. *Brecht*, 507 U.S. at 637; *Kotteakos*, 328 U.S. at 765. Therefore, I will grant Williams' motion to reconsider his 28 U.S.C. § 2255 motion. His § 2255 motion is granted, and his § 924(c) conviction is vacated.

                          __s/ANITA B. BRODY, J._____
                          ANITA B. BRODY, J.